

Copy hand-delivered
to chambers

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

'06 AUG 18 AM :34

UNITED STATES OF AMERICA,

Plaintiff,

v.                                                    Case No. 06-CR-116

PHILLIP DALE MEROW,

Defendant.

## PLEA AGREEMENT

1.     The United States of America, by its attorneys, Steven M. Biskupic, United States Attorney for the Eastern District of Wisconsin, and Penelope L. Coblentz, Assistant United States Attorney, and the defendant, Phillip D. Merow, individually and by attorney Douglas M. Bihler, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.     The defendant has been charged in four counts of a four-count indictment which allege violations of Title 18, United States Code, Sections 2423(b) and 2422(b).

3.     The defendant has read and fully understands the charges contained in the indictment and fully understands the nature and elements

of the crimes with which he has been charged and those charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4.    The defendant voluntarily agrees to plead guilty to the following counts set forth in full as follows:

## COUNT TWO

### THE GRAND JURY FURTHER CHARGES THAT:

Between on or about April 11, 2006, and on or about April 15, 2006, at South Beloit, Illinois, and in the Eastern District of Wisconsin, and elsewhere,

### PHILLIP DALE MEROW

used a facility in interstate commerce, that is, a computer  connected to the internet, to attempt to knowingly persuade, induce, entice and coerce a person under eighteen years of age, in Milwaukee County, to engage in sexual activity for which the defendant could be charged with a criminal offense under federal law.

All in violation of Title 18, United States Code, Section 2422(b).

2

## COUNT FOUR

**THE GRAND JURY FURTHER CHARGES THAT:**

During the summer of 2005, to on or about October 15, 2005, at South Beloit, Illinois, and in the Eastern District of Wisconsin and elsewhere,

## PHILLIP DALE MEROW

used a facility in interstate commerce, that is, a computer connected to the internet, to attempt to knowingly persuade, induce, entice and coerce a person under eighteen years of age, in Washington County, to engage in sexual activity for which the defendant could be charged with a criminal offense under federal law.

All in violation of Title 18, United States Code, Section 2422(b).

5.    The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offenses described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits to these facts and that these facts establish his guilt beyond a reasonable doubt:

On April 10, 2006, Milwaukee Police Department (MPD) Detective Doreen Andrews, while online in an undercover capacity as "Kelly," a 14

3

year old female, in a Yahoo Illinois chat room, received an instant message (IM) from an individual later identified as Phillip Dale Merow, w/m, 02-16-1955, from South Beloit, Illinois. During this initial contact, Merow asked "Kelly" if they could "hook up once in a while for some fun times if you know what I mean." This request was made after "Kelly" had told him she was 14 years old. Merow said he had another 14 year old friend that he did "things" with. Merow provided "Kelly" with his email address and she gave him her undercover cell phone number.

Approximately 10 minutes later, Merow called "Kelly" on her cell phone. During the recorded telephone call Merow stated he wanted to drive to Milwaukee to meet "Kelly." Merow warned her that she could not tell anyone that the two were going to meet - it had to be their secret. Merow talked about his other 14 year old friend that he did things to because she is "curious" and "wants to learn." Kelly responded that she had not gone out with a lot of guys and Merow assured her that was ok. Merow explored how sexually experienced "Kelly" was. When "Kelly" said she had done a "blow job" on her boyfriend, Merow wanted to know if they could get together on Saturday night. Merow said he would get a hotel room.

The following day, April 11, 2006, "Kelly" received an IM from Merow who asked about the upcoming weekend and whether he should get a room.

4

Merow said he would like to perform oral sex on "Kelly" and to have her do the same to him.

The next computer chat was on April 13, 2006, when "Kelly" received an IM from Merow. Merow said he could not make it on Friday and they agreed to meet on Saturday in Milwaukee. Merow said after they met, they could find a "cheap [decent] motel." "Kelly" asked Merow to promise that he would not tell anyone and he replied "heck no id go to jail."

On Saturday, April 15, 2006, "Kelly" received an IM from Merow to confirm that they were still meeting. Merow again asked "Kelly" what she wanted to do with him and they discussed oral sex. The chat ended with the understanding that Merow would call "Kelly" at approximately 2:45 pm when he arrived in Milwaukee, Wisconsin.

At approximately 2:27 pm, Merow arrived at the agreed upon location in a black jeep, with Illinois registration plates 389-6299. The registration listed to Phillip Merow from South Beloit. Merow was subsequently arrested and advised of his *Miranda* rights. Merow admitted that he had rented a motel room at the Motel 6 on Howell Avenue in Milwaukee.

Merow signed a written consent form which allowed MPD officers to search his vehicle, telephone, residence, storage shed, library records and the motel room. A piece of paper with "Kelly's" screen name and telephone

5

number was located on the front passenger seat in Merow's car. The Motel 6 key card was also recovered from Merow's car. MPD officers went to the Motel 6 and searched the room Merow had rented. In a duffel bag on the dresser an officer recovered two magazines containing adult pornography, a jar of Vaseline, the Motel 6 room receipt and numerous other papers with screen names.

Merow later provided another *Mirandized* statement wherein he admitted that he had used the computer at the library in South Beloit, Illinois, to chat with "Kelly" as well as others. Merow further admitted that his intent was to have sexual contact with "Kelly" but that he would not have pressured her to do anything that she did not want to do. Merow said they would have engaged in oral sex as well as sexual intercourse.

Following Merow's arrest he gave permission to MPD to view his email. During the search, numerous email communications between Merow and a person later identified as "E.Z.", DOB: 07/31/1989, from West Bend, Wisconsin. The first email retrieved was from "E.Z." to Merow. "E.Z." emailed "ya I love u 2 and yes we will meet and u don't care that I am 16 . . ." Merow replied that he missed her and wanted to see her in person to hold her and tell her that he loved her.

6

Merow said he wanted to see her the following weekend and then asked her " did you say that you swallow I hope so . . . I love you honey answer me back love you phil." Merow asked if he came up in two weeks if she could get out for the entire night to be together. If so, Merow would rent a room and call her when he arrived. During this email, Merow said he did not want any "cops" around because he was the one would go to jail.

On or about October 15, 2005, Merow traveled to West Bend, Wisconsin, and stayed in a hotel awaiting the arrival of "E.Z.," who failed to meet him. Later, Merow emailed "E.Z." and stated"wish we could have hooked up was very boring in that room by myself got tired of playing with myself could have used some help."

Detective Andrews contacted the Super 8 motel located at 2433 W. Washington Street in West Bend, Wisconsin. The manager confirmed that Merow checked into the Super 8 motel on Saturday, October 15, 2005, and had paid cash.

On April 27, 2006, Detective Andrews and another officer met with Merow in Beloit, Wisconsin. Merow was advised that he was not under arrest and was free to leave at any time. Merow provided a statement wherein he admitted that he drove from Illinois to West Bend, Wisconsin, either in late summer or early fall of 2005 to meet a girl named "E.Z."

7

Merow thought she was 16 or 17 years old. Merow said they emailed the entire summer of 2005. When he drove to West Bend, Merow had hoped to meet "E.Z." Merow admitted that he talked with "E.Z." about having sex. Merow also admitted that if he had met "E.Z." in person and if "there was a mutual attraction" it was possible they would have had sexual contact. Merow reviewed a text copy of the email correspondence between "E.Z." and Phil and Merow acknowledged they were his emails. Merow emailed E.Z. from a computer located in Illinois.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of or participation in these offenses.

## PENALTIES

6. The parties understand and agree that the offenses to which the defendant will enter a plea of guilty carry the following maximum terms of imprisonment and fines: Counts Two and Four, 30 years and $250,000.00. The counts also carry a mandatory minimum of five years of imprisonment. Each count also carries a mandatory special assessment of $100.00 and a maximum of five years of supervised release.

8

7.    The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## DISMISSAL OF REMAINING COUNTS

8.    The government agrees to move to dismiss the remaining counts of the Indictment at the time of sentencing.

## ELEMENTS

9.    The parties understand and agree that in order to sustain the charge of the use of a facility in interstate commerce, that is, a computer modem connected to the Internet to attempt to knowingly persuade a minor to engage in sexual act, in violation of Title 18, United States Code, Section 2422(b), as set forth in the Counts Two and Four of the Indictment, the government must prove each of the following propositions beyond a reasonable doubt:

First, the defendant used any facility or means of interstate or foreign commerce (i.e. a computer modem connected to the Internet) to knowingly persuade, induce, entice or coerce any individual who has not attained the age of 18 years;

Second, to engage in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so.

9

## SENTENCING PROVISIONS

10.     The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11.     The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12.     The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offenses set forth in paragraph 4. The defendant acknowledges and agrees that his attorney in turn has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

13.     The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the

10

defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of defendant's criminal history.

## Sentencing Guidelines Calculations

14. The parties acknowledge, understand, and agree that the sentencing guidelines calculations included in this agreement represent the positions of the parties on the appropriate sentence range under the sentencing guidelines. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

15. The parties acknowledge, understand and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range,

11

even if the relevant conduct is not the subject of the offenses to which defendant is pleading guilty.

## Base Offense Level

16.    The parties agree to recommend to the sentencing court that the applicable base offense level for the offenses charged in Counts Two and Four of the Indictment is **24** under Sentencing Guidelines Manual § 2G1.3

## Specific Offense Characteristics

17.    The parties acknowledge and understand that the government will recommend to the sentencing court that a two-level increase for use of a computer to persuade, entice, coerce a minor to engage in prohibited sexual conduct under Sentencing Guidelines Manual § 2G1.3(b)(3) is applicable to the offense level for the offenses charged in Counts Two and Four of the Indictment for an adjusted level of **26.**

18.    The parties agree that under Sentencing Guidelines Manual § 3D1.4 Counts Two and Four count as one unit each for a total of 2 units. The offense level is therefore increased by an additional 2 levels for an adjusted level of **28**.

19.    The parties agree that the sentence imposed on Counts Two and Four of the Indictment, for which the statute specifies a minimum term of

12

five years of imprisonment, may be concurrent sentences pursuant to U.S.S.G. § 5G1.2.

## **Acceptance of Responsibility**

20.    The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

## **Sentencing Recommendations**

21.    Both parties reserve the right to apprise the district court and the probation office of any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

22.    Both parties reserve the right to make any recommendation regarding any and all factors pertinent to the determination of the

sentencing guideline range; the fine to be imposed; the amount of restitution and the terms and condition of its payment; the length of supervised release and the terms and conditions of the release; the defendant's custodial status pending the sentencing; and any other matters not specifically addressed by this agreement.

23. The government agrees to recommend a sentence within the applicable sentencing guideline range, as determined by the court with the understanding that Counts Two and Four have a minimum term of imprisonment of five years. The defendant will not join in this recommendation and is free to request a sentence below the guideline range, if the guideline range is higher than the minimum term of imprisonment of five years.

## **Court's Determinations at Sentencing**

24. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties

14

further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

25. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

26. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable upon entry of the judgment of conviction. The defendant agrees not to request any delay or stay in payment of any and all financial obligations.

## Special Assessment

27. The defendant agrees to pay the special assessment in the amount of $200.00 prior to or at the time of sentencing.

## DEFENDANT'S WAIVER OF RIGHTS

28. In entering this agreement, the defendant acknowledges and understands that in so doing he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

        a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and

15

public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

b.       If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

c.       If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

d.       At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

e.       At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

16

29. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

30. The defendant acknowledges and understands that he will be adjudicated guilty of each offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

31. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the

17

defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

## **Further Civil or Administrative Action**

32. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## **GENERAL MATTERS**

33. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

34. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

35. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

18

36.    The defendant understands that pursuant to the Victim and Witness Protection Act and the regulations promulgated under the Act by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

37.    The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement.    The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations

for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

38. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

20

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 8/18/06

_____
PHILLIP DALE MEROW
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 8-18-06

_____
DOUGLAS M. BIHLER
Attorney for Defendant

For the United States of America:

Date: 8/18/06

_____
STEVEN M. BISKUPIC
United States Attorney

Date: August 18, 2006

_____
PENELOPE L. COBLENTZ
Assistant United States Attorney

21